DANIEL WEISS (SBN 275353)
djweiss@me.com
11444 West Olympic Boulevard, Suite 740
Los Angeles, California 90064-1557
Telephone: (310) 966-8400
Facsimile: (310) 966-8810

Attorneys for Plaintiff
ILENE S. RESNICK WEISS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILENE S. RESNICK WEISS,<br><br>Plaintiff,<br><br>vs.<br><br>AUDI OF AMERICA, LLC, VOLKSWAGEN GROUP OF AMERICA, and DOES 1 through 20,<br><br>Defendants. | **Case No.**   2:19-cv-5609<br><br>**COMPLAINT FOR:**<br><br>**(1)  FRAUD**<br><br>**(2)  BREACH OF CONTRACT**<br><br>**(3)  UNJUST ENRICHMENT**<br><br>**(4)  VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code §§ 1750, *et seq.*)**<br><br>**(5)  VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**<br><br>**(6)  VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**<br><br>**(7)  BREACH OF EXPRESS WARRANTY (Cal. Com. Code §§ 2313 & 10210);**<br><br>**(8)  BREACH OF IMPLIED WARRANTY OF** |

{2970634.1}

MERCHANTABILITY (Cal. Com. Code §§ 2314 & 10212);

(9) **VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES (Cal. Civ. Code §§ 1791.2 & 1793.2(d));**

(10) **VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Cal. Civ. Code §§ 1791.1 & 1792); and**

(11) **BREACH OF EXPRESS CALIFORNIA EMISSION WARRANTIES (Cal. Civ. Code §§ 1793.2, *et seq.*)**

**JURY TRIAL DEMANDED**

{2970634.1}

COMPLAINT

1   Plaintiff Ilene S. Resnick Weiss ("Plaintiff") brings this action against Audi
2   of America, LLC and Volkswagen Group of America, Inc. (together, "Defendants").
3   Plaintiff alleges the following based upon information and belief, the investigation
4   of counsel, and personal knowledge as to the factual allegations pertaining to
5   herself.

6   **INTRODUCTION**

7       1.      This action arises out of the long-running scheme by Defendants to
8   design, manufacture, market, and sell purportedly "Clean Diesel" vehicles, that
9   violate California and United States emissions laws.  Defendants' "Clean Diesel"
10  vehicles, including a 2014 Audi A6 3.0 liter 6-cylinder turbocharged diesel injection
11  ("TDI") passenger automobile (the "Vehicle") purchased by Plaintiff, were
12  intentionally designed and manufactured to deceive regulators into approving for
13  sale vehicles which did not comply with claimed or required emissions standards.

14      2.      Defendants' fraudulent scheme involved equipping approximately
15  590,000 of their "Clean Diesel" vehicles (the "Affected Vehicles"), including
16  Plaintiff's Vehicle with a secretly embedded software defeat device that allowed the
17  vehicles to evade United States Environmental Protection Agency ("EPA") emission
18  test procedures.  Specifically, during federal test procedure ("FTP") emission
19  testing, the Affected Vehicles' electronic control module ("ECM") ran software
20  logic and/or calibrations that produce compliant emission results under an ECM
21  calibration referred to as the "temperature conditioning mode."  At other times
22  during normal vehicle operation, the Affected Vehicles' ECM software ran a
23  separate "normal mode" that reduces the effectiveness of the emission control
24  system.  In other words, the Affected Vehicles' ECM software tracks certain
25  parameters of the FTP and causes emission control systems to underperform (or fail
26  to perform) when the software determines that the vehicle is not undergoing the
27  FTP.  Defendants have since conceded that the defeat device installed on the
28  Affected Vehicles were designed and installed to cheat emissions tests.  Only by

{2970634.1}

1 installing defeat devices were Defendants able to obtain Certificates of Conformity

2 ("COCs") from the EPA and Executive Orders ("EOs") from the California Air

3 Resources Board ("CARB") for Audi-branded 3.0-liter diesel engine vehicles.

4      3.    The use of the defeat device causes emissions from the Affected

5 Vehicles to grossly exceed EPA's standards, resulting in harmful air pollution,

6 including nitrogen oxide ("NOx"). Despite high levels of environmental harm

7 caused by the Affected Vehicles, Defendants aggressively marketed them as "green"

8 vehicles and cynically targeted environmentally concerned consumers, like Plaintiff.

9 Plaintiff was fraudulently induced into purchasing the Vehicle—at an inflated

10 price—which spews high levels of toxic emissions, causing irreparable environment

11 harm and endangering the health of Plaintiff and her family. The EPA would not

12 certify motor vehicles equipped with a defeat device as defined by U.S. law.

13 Manufacturers could not sell motor vehicles in the United States without a COCs

14 from the EPA. Accordingly, Plaintiff would not—or could not—have purchased her

15 Vehicle but for Defendants' fraudulent scheme because Defendants obtained COCs

16 and EOs only by cheating. As a result, Plaintiff has suffered injury in fact.

17                          **JURISDICTION**

18      4.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)

19 because complete diversity exists between Plaintiff and Defendants and the amount

20 in controversy exceeds $75,000. This Court also has supplemental jurisdiction over

21 the state law claims pursuant to 28 U.S.C. § 1367(a).

22                             **VENUE**

23      5.    Venue is proper in this District under 28 U.S.C. § 1391 because a

24 substantial part of the events or omissions giving rise to Plaintiff's claims occurred

25 in this District. Plaintiff is domiciled in this District and purchased her Vehicle in

26 this District. Defendants have marketed, advertised, and sold, the Affected

27 Vehicles, including Plaintiff's Vehicle within this District.

28

**PARTIES**

6.     Plaintiff is a citizen of California domiciled in Los Angeles, California. On March 14, 2014, Plaintiff purchased a new 2014 Audi A6 TDI, VIN WAUHMAFC6EN104482 (e.g., the Vehicle) from Santa Monica Brentwood Automotive, LLC ("Santa Monica Audi") in Santa Monica, California.  Plaintiff paid $69,989.35 for the Vehicle.  Plaintiff considers herself an environmentalist, and she wanted an environmentally-friendly car that was fuel efficient and had low emissions.  Before purchasing the Vehicle, Plaintiff, along with her husband, extensively researched environmentally responsible vehicles, including reviewing Audi's website (www.audiusa.com), advertisements and speaking with representatives of Santa Monica Audi, and was led to believe by Defendants' representations that Audi's "clean diesel" vehicles were "green" and good for the environment, and differed from a traditional diesel vehicle.  The emissions representations made by Defendants, in combination with the advertised fuel efficiency and performance, as well as the Vehicle's reputation for maintaining a high resale value, convinced Plaintiff that the Vehicle was an environmentally responsible choice and, therefore, induced Plaintiff to purchase the Vehicle.

7.     Unknown to Plaintiff at the time the Vehicle was purchased, the Vehicle was equipped with a defeat device which caused the Vehicle to get an undue EPA certification and pass emissions tests, but during normal operation, emit harmful NOx at levels up to 9 times the federal standard.  The deliberate use of the illegal defeat device by Defendants has caused Plaintiff out-of-pocket loss, future attempted repairs, future additional fuel costs, loss of warranty value, and diminished value of her vehicle.  Defendants knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff or government regulators, so Plaintiff purchased the Vehicle on the reasonable, but mistaken, belief that the Vehicle complied with United States and California emissions standards, was properly EPA and CARB certified, and would retain all of

1 | its operating characteristics throughout its useful life.

2 |      8.    Defendant, Audi of America, LLC ("Audi America") is a Delaware
3 | limited liability company with its principal place of business located at 2200
4 | Ferdinand Porche Drive, Herndon, Virginia 20171.  Audi America is a wholly-
5 | owned U.S. subsidiary of Audi AG,[1] and it engages in the advertising, marketing
6 | and sale of Audi-branded automobiles in the United Sates, including California.

7 |      9.    Defendant, Volkswagen Group of America, Inc. ("VW America") is a
8 | New Jersey corporation with its principal place of business located at 2200
9 | Ferdinand Porche Drive, Herndon, Virginia 20171.  VW America is a wholly-owned
10 | U.S. subsidiary of Volkswagen AG ("VW AG").[2]  VW America's Engineering and
11 | Environmental Office prepared and submitted applications for COCs and EOs to the
12 | EPA and CARB to obtain authorization to sell the Affected Vehicles, including the
13 | Vehicle in the United States.[3]  VW America's Test Center California performed
14 | testing relating to the Affected Vehicles.  *See id.*  Additionally, VW America has
15 | two unincorporated business divisions: Volkswagen of America, Inc. and Audi of

---

[1] Audi AG is the parent of Audi America and a subsidiary of the Audi Group, which is a wholly-owned subsidiary of Volkswagen AG.  Audi AG designs, develops, manufactures, and sells luxury automobiles.  Audi AG engineered, designed, developed, manufactured and installed the defeat device software on Audi vehicles equipped with a 3.0-liter TDI diesel engine, including the Vehicle, and exported these vehicles with the knowledge and understanding that they would be sold throughout the United States.  Audi AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell the Vehicle.  According to the U.S. government, approximately 87,000 3.0-liter TDI® diesel engine vehicles containing the defeat device were sold by in the United States, with 17,000 sold in California.

[2] VW AG designs, manufactures and sells vehicles throughout the United States and this District.  VW AG is also the parent corporation of Audi AG.

[3] *See* Rule 11 Plea Agreement between the United States of America and Volkswagen AG, dated January 11, 2017 ("Plea Agreement"), Ex. 2 (Statement of Facts), ¶ 25, https://www.justice.gov/opa/press-release/file/924436/download.

{2970634.1}

1  America, Inc. ("AOA"). AOA purchases Audi-brand vehicles from Audi AG and
2  then imports, distributes, and sells these vehicles to franchised Audi dealers
3  throughout the United States, including Santa Monica Audi.

4        10.    Plaintiff is ignorant of the true names and capacities of the remaining
5  defendants, and therefore sues these defendants as DOES 1-20, inclusive, by such
6  fictitious names. Plaintiff will amend this Complaint to allege their true names and
7  capacities when this information is ascertained. Plaintiff is informed and believes
8  and thereon alleges, that each of the Defendants designated herein as a DOE is
9  legally responsible for the events and happenings herein referred to and caused
10 injuries and damages to Plaintiff as hereinafter alleged.

11       11.    Each Defendant, whether actually or fictitiously named herein, was the
12 principal, agent, or employee of each other Defendant and in acting as such
13 principal or within the course and scope of such employment or agency, took some
14 part in the acts and omissions hereinafter set forth by reason of which each
15 Defendant is liable to Plaintiffs for the relief prayed for herein.

16                         **GENERAL ALLEGATIONS**

17 **A.   Defendants' False and Misleading Advertisements**

18       12.    Defendants pitched Audi-branded 3.0-liter diesel engines as
19 environmentally friendly, powerful, and efficient. Defendants deceptively portrayed
20 the Vehicle as clean and safe for the environment.

21       13.    Defendants' communications conveyed the message that superior
22 German engineers possessed technical proficiency to design and manufacture
23 efficient "Clean Diesel" engines. The "Truth in Engineering" tagline used by Audi,
24 and viewed and relied upon by Plaintiff and her husband when deciding to purchase
25 the Vehicle, implied Defendants employed engineers of honesty and integrity.

26       14.    Advertisements and marketing materials portrayed Defendants' "Clean
27 Diesel" vehicles as a sensible choice for car buyers concerned about environmental
28 impacts. Californians, including Plaintiff were exposed to this barrage of

1  advertising.  Defendants deliberately and cynically targeted consumers, like
2  Plaintiff, who were interested in low emissions vehicles.

3       15.    In a 2010 press release announcing the decision to advertise during the
4  Super Bowl, stated: "The spot will highlight the Audi A3 TDI, recently named by
5  Green Car Journal as the 2010 'Green Car of the Year' and will have a fun, tongue-
6  in-cheek environmental theme … This year, Audi will demonstrate its leadership
7  position within the luxury segment with a brand spot that delivers the message that
8  being environmentally conscious might not be easy, but the Audi A3 TDI clean
9  diesel is now a proven environmental solution."  Plaintiff, along with over millions
10 of other Americans watching the Super Bowl, viewed the advertisement.

11      16.    Prior to buying the Vehicle, Plaintiff viewed a 2014 Audi A6 TDI
12 brochure which states:

13          Clean diesel, the kind that powers Audi TDI® clean diesel
14          technology, is demonstrably cleaner than the fuel used in
15          previous generations of diesel engines. Innovations have
16          removed much of the pollutants, resulting in lower $CO_2$
17          emissions than even the output from comparable gasoline
18          engines—while still delivering greater fuel efficiency.  1
19          So what's the catch? We have a few that further clean the
20          diesel exhaust. The names might sound daunting—close-
21          coupled oxidation catalysts, coated particle filters, active
22          exhaust gas aftertreatment systems utilizing AdBlue®
23          reducing agent, but the thing they do is simple. Audi
24          employs these systems via sensors which detect the soot
25          level and emissions of the exhaust to work at maximum
26          efficiency, filtering excess pollutants and particles, which
27          allows you…

28 The brochure failed to inform Plaintiff that sensors also detected when the

{2970634.1}                        6

1  "Clean diesel" vehicles were undergoing emissions tests and the technology only
2  functioned as claimed during such tests.

3          17.     Audi's 2014 A6 brochure falsely stated that the Audi TDI® clean
4  diesel engine has achieved ultra-low emissions vehicle status (ULEV II) in
5  California, and further stated: "With innovative diesel particulate filters and the
6  nontoxic AdBlue® reducing agent, we eliminate up to 95% of diesel NOx
7  emissions."[4] The brochure further stated "Another way diesel creates fewer
8  emissions is that it gets better mileage, up to 20% more mpg than comparable
9  gasoline engines, in fact." *Id.*

10         18.     Contrary to these advertisements, Defendants knew the Affected
11  Vehicles' real world NOx and other emissions exceeded the allowable EPA
12  emissions standards.  Simply put, because of the emissions defeat device,
13  Defendants' claims about low emissions, NOx reductions, emissions compliance,
14  eco-consciousness, and comparative resale value were false or deceptive.

15         19.     Plaintiff also relied on government regulators regarding the emissions
16  level of the Vehicle.  Plaintiff knew that regulators would not approve for sale in
17  California a vehicle which did not meet required emissions standards.  Furthermore,
18  the new vehicle sticker on the Vehicle, as required, featured a category called
19  "Green Rating".  On a scale of 1-10, the Vehicle was well above average, at 7.  The
20  high rating implies that the Vehicle complied with applicable emissions standards.

21         20.     Plaintiff, along with her husband, made clear to the salesman from
22  Santa Monica Audi their desire for an environmentally responsible vehicle.  Based
23  on Defendants' advertisements and marketing materials, Santa Monica Audi's
24  salesman enthusiastically touted the environmental benefits of the Vehicle.

25

26

27
──────────────
28  [4] *See* https:///www.audiusa.com/content/dam/audiusa/Documents/2014-Audi-A6-
brochure.pdf.

**B.** **Defendants' Use Of An Illegal Defeat Device In The Affected Vehicles Is**
   **Publicly Exposed And Both VW AG And Audi AG Concede The Fraud**

21.    A few months after Plaintiff purchased the Vehicle, the West Virginia University's Center for Alternative Fuels, Engines & Emissions published results of a study commissions by the International Council on Clean Transportation, and conducted in collaboration with CARB, that found that on-road NOx emissions from two 2.0 liter diesel vehicles, during normal usage, emitted levels of NOx well above reported and legal limits.  Thereafter, EPA and CARB initiated investigations.

22.    On September 18, 2015, the EPA issued a public Notice of Violation of the Clean Air Act, 42 U.S.C. §§ 7401-7671q ("CAA") to VW AG, Audi AG and VW America stating that EPA had determined that these entities had violated the CAA by manufacturing and installing defeat devices in certain of VW-branded and Audi-branded 2.0-liter diesel engine vehicles.[5]  These vehicles emit up to 40 times more pollution than federal emissions standards allow.

23.    On November 2, 2015, CARB issued an In Use Compliance Letter informing VW AG, Audi AG, VW America, Porche AG, and Porche Cars North America that test results for 2014, 2015, and 2016 Audi-branded vehicles with 3.0-liter diesel engines included illegal emissions defeat devices.[6]

24.    On November 2, 2015, EPA issued a second Notice of Violation ("Second NOV") to VW AG, Audi AG, VW America and others, citing violations of the CAA related to the dual calibration strategy involving the "temperature conditioning mode" and the "normal mode," and the resultant excess emissions in

---

[5] *See* Plea Agreement, Ex. 2 ¶ 64, https://www.justice.gov/opa/ pressrelease/file/924436/download; Letter from EPA to VW dated Sept. 18, 2015, https://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf.

[6] *See* https://www.arb.ca.gov/newsrel/in_use_compliance_letter_110215.pdf.

1 certain 3.0-liter diesel vehicles.[7]  Installation of this undisclosed defeat device
2 results in vehicles that meet emissions standards in the laboratory or testing station,
3 but during normal operation, emit NOx at levels up to 9 times the standard.

4     25.    In response to the Second NOV, on or about November 2, 2015, VW
5 entities including at least VW AG issued the following false statement:
6 "Volkswagen AG wishes to emphasize that no software has been installed in the 3-
7 liter V6 diesel power units to alter emissions characteristics in a forbidden
8 manner."[8]

9     26.    On or about November 19, 2015, under pressure from the EPA and
10 CARB, VW entities including at least VW AG and Audi AG admitted that all 3.0-
11 liter diesel Audi models since 2009, such as Plaintiff's Vehicle, contained at least
12 three undisclosed Auxiliary Emission Control Devices ("AECDs").[9]  Upon
13 questioning from EPA, Audi AG representatives conceded that one of these three
14 undisclosed AECDs—the temperature conditioning mode—is regarded as a defeat
15 device under U.S. law.  See id.  Specifically, Audi AG admitted: "One of them is
16 regarded as a defeat device according to applicable U.S. law.  Specifically, this is
17 the software for the temperature conditioning of the exhaust-gas cleaning system."[10]

18     27.    In response to Audi AG's admission, on November 25, 2015, CARB
19 issued an In Use Complaint Letter to Audi AG stating that all 3.0 liter model year
20
21
_____

22 [7] See Plea Agreement, Ex. 2, ¶ 67, https://www.justice.gov/opa/press-
23 release/file/924436/download; accord Letter from Susan Shinkman, Director, EPA
Office of Civil Enforcement to Volkswagen dated Nov. 2, 2015,
24 http://www.epa.gov/sites/production/files/2015-11/documents/vw-nov-2015-11-02.

25 [8] See Plea Agreement, Ex. 2, ¶ 68, https://www.justice.gov/opa/press-
release/file/924436/download.

26 [9] See id., ¶ 69; https://www.arb.ca.gov/newsrel/newsrelease.php?id =771.

27 [10] Statement of Audi's discussions with EPA and CARB (Nov. 23, 2015),
28 http://www.volkswagenag.com/content/vwcorp/info_center/en/news/2015/ epa.html.

1  2009-2016 Audi diesel vehicles contained an unlawful defeat device.[11]  There are
2  approximately 87,000 of these vehicles in the U.S. and about 17,000 in California.

3    28.    On January 4, 2016, the U.S. Department of Justice ("DOJ"), on behalf
4  of the EPA, filed a civil complaint (as amended on October 7, 2016) against, among
5  others, VW AG, Audi AG and VW America for violations of the CAA alleging that
6  approximately 90,000 model year 2009 to 2016 motor vehicles containing 3.0-liter
7  diesel engines had illegal emissions defeat devices that sensed whether the vehicle is
8  undergoing testing and produces regulation-compliant results, but operates a less
9  effective emissions control system when the vehicle is driven under normal
10 circumstances, resulting in harmful air pollution.[12]  The DOJ's complaint further
11 alleges that Audi AG violated the CAA by selling, introducing into commerce, or
12 importing into the United States motor vehicles that are designed differently from
13 what Audi AG had stated in applications submitted to the EPA for a COC. *See id.*

14    29.    On or about May 16, 2016, Audi AG representatives met with CARB
15 and admitted that there were additional elements within two of its undisclosed
16 AECDs, which impacted the dosing strategy in the 3.0-liter Affected Vehicles.[13]

17    30.    On or about July 19, 2016, in a presentation to CARB, Audi AG
18 representatives conceded that elements of two of its undisclosed AECDs met the
19 definition of a defeat device. *Id.*, ¶ 71.

20    31.    On March 29, 2016, the U.S. Federal Trade Commission filed a
21 complaint against VW America alleging that it violated Section 13(b) of the Federal
22 Trade Commission Act, 15 U.S.C. § 53(b) because VW America deceived

23
24

[11] *See* https://www.arb.ca.gov/newsrel/2015_11_25_3liter_iuc_recall_letter_final_
signed.pdf?_ga=2.44128354.733673989.1526335984-1295022620.1522193118.
[12] *See* https://www.justice.gov/opa/file/809826/download.
[13] *See* Plea Agreement, Ex. 2, ¶ 70, https://www.justice.gov/opa/press-release/file/924436/download.

consumers with the advertising campaign it used to promote supposedly "Clean Diesel" VWs and Audis, which VW AG and Audi AG fitted with illegal emission defeat devices designed to mask high emissions during government tests.[14]

32.　On June 27, 2016, the People of the State of California acting by and through the Attorney General and CARB filed suit against VW AG, VW America, Audi AG and others for violations of California law arising from the illegal defeat devise software installed in the Affected Vehicles.  On May 27, 2017, these defendants entered into a $225 million settlement with the DOJ, EPA and CARB to fully resolve the legal issues relating to the use by VW AG, VW America and Audi AG in 3.0 liter diesel passenger cars of the emissions control "defeat device".[15]

33.　On January 11, 2017, the DOJ announced that VW AG had agreed to plead guilty to three criminal felony counts[16] and pay a $2.8 billion criminal penalty as a result of the company's long-running scheme to sell 3.0-liter diesel vehicles in the U.S. by using a defeat device to cheat on emissions tests mandated by the EPA and CARB, and lying and obstructing justice to further the scheme.  In the Plea Agreement, VW AG stipulated to a Statement of Facts that sets forth the factual basis for its criminal wrongdoing and "agree[d] that it will neither contest the admissibility of, nor contradict, the Statement of Facts … in any proceeding."[17]

34.　In the Plea Agreement, VW AG admitted the following: "In order to

---

[14] *See* https://www.ftc.gov/system/files/documents/cases/160329volkswagen_cmpt.

[15] *See* https://ww2.arb.ca.gov/news/federal-court-approves-225-million-settlement-vw-30-liter-diesel-cheating-case.

[16] Specifically, as explained by the DOJ, VW AG pleaded guilty to the following crimes: (1) conspiracy to defraud the United States, commit wire fraud, and violate the CAA; (2) obstruction of justice; and (3) importing goods into the stream of U.S. commerce by false statements.  *See* https://www.justice.gov/opa/pr/volkswagen-ag-agrees-plead-guilty-and-pay-43-billion-criminal-and-civil-penalties-six.

[17] *See* Plea Agreement, Section 1E, p. 7, https://www.justice.gov/opa/press-release/file/924436/download.

pass U.S. emissions tests, Audi engineers designed and installed software designed to detect, evade and defeat U.S. emissions standards, which constituted a defeat device under U.S. law." *See id*, Ex. 2, ¶ 39. Specifically, "Audi AG engineers calibrated a defeat device for the 3.0 [Affected] Vehicles … that varied injection levels of a solution consisting of urea and water ('AdBlue') into the exhaust gas system based on whether the vehicle was being tested or not, with less NOx reduction occurring during regular driving conditions." *Id.*, ¶ 40.

35.    Certain supervisors employed by Defendants and others caused defeat device software to be installed on all 3.0-liter diesel engine vehicles sold in the United States from 2009 through 2015, including the Vehicle. *See id.*, ¶ 72.

C.    **Plaintiff's Health Fears And Her Response To Defendants' Fraud**

36.    From the initial news reports in the summer of 2014, through putting the Vehicle in storage in May of 2016, Plaintiff's concern over using the Vehicle, increased based on, among other things, the following: (a) the 2014 TDI recall; (b) the first notice of violation issued by EPA to VW; (c) the second notice of violation issued by EPA to Defendants; (d) the In Use Complaint Letter issued by CARB to Defendants; (e) extensive news coverage of Defendants' fraudulent use the defeat device; (f) legal maneuverings by the DOJ and various state agencies, including CARB against Defendants and others; and (g) Audi AG's admissions of fraud.

37.    NOx pollution contributes to atmospheric levels of nitrogen dioxide, harmful ground-level ozone and fine particulate matter. Exposure to these pollutants has been linked with a range of serious health effects, including increased asthma attacks and other respiratory illnesses that can be serious enough to send people to the hospital. Exposure to ozone and particulate matter is also associated with premature death due to respiratory-related or cardiovascular-related effects. Children and people with pre-existing respiratory disease such as asthma are particularly at risk of health effects from exposure to these pollutants.

38.    Research into the health effects of NOx triggered immediate concern

1  regarding health consequences to Plaintiff and her family.  Plaintiff's husband
2  suffers from asthma and Plaintiff was concerned that exposure to the excessive
3  levels of NOx spewing from the Vehicle would exacerbate his asthma.  Potential
4  negative health effects of the high levels of pollutants coming from the Vehicle on
5  Plaintiff's two minor children were also of great concern to Plaintiff.  Plaintiff
6  parked the Vehicle in a garage attached to the house.  Plaintiff was fearful about the
7  amount of NOx that was released each time she parked the car and whether it seeped
8  into the house.  Given the negative health effects of NOx, Plaintiff was concerned
9  that the Vehicle was harming Plaintiff and her family's health.  Concerned about her
10  health and that of her family, Plaintiff started parking the Vehicle on the street.  As
11  the defeat devise diesel scandal widened, Plaintiff grew more apprehensive about
12  driving the Vehicle.  Family outings with four or five people more frequently were
13  undertaken in Plaintiff's husband's smaller car, a compact Nissan Leaf.

14      39.    Prior to the purchase of the Vehicle, Plaintiff's three previous
15  automobiles were Toyota Prius Hybrids.  The Prius communicated that Plaintiff was
16  concerned about the environment and pragmatic.  Plaintiff's husband drove a 2011
17  Nissan Leaf.  The Leaf communicated the family's willingness to adopt new
18  technology along with a commitment to the environment.  In purchasing the
19  Vehicle, Plaintiff's purchase was intended to demonstrate that, through technical
20  innovation, luxury and environmental responsibility were possible.

21      40.    For Plaintiff, pride of ownership in alleged "clean" vehicle gave way to
22  anger and disgust.  Defendants had played her as a sucker.  Every mile driven in the
23  Vehicle caused harmed to the environment, violated Plaintiff's values and harmed
24  Plaintiff's health.  Every time the Vehicle was driven into the garage there was the
25  knowledge that Plaintiff's family was being exposed to excessive levels of NOx.

26      41.    Meanwhile it seemed to Plaintiff it would be years (if ever) before the
27  Vehicle could be brought into compliance with warranted and required emissions
28  standards.  Unwilling to continue to harm the environment and advertise the failure

1    of environmental regulations as well as risk the health of her and her family, in May

2    2016 Plaintiff decided to permanently garage the Vehicle. Specifically, the Vehicle

3    was stored in a West Los Angeles, California garage which charges a monthly rate

4    of $130. Plaintiff then purchased a replacement Lexus Hybrid.

5                  **TOLLING OF THE STATUTE OF LIMITATIONS**

6        **Pending Class Actions**

7        42.    In the fall of 2015 when the public learned of Defendants' deliberate

8    use of a defeat device, litigation in the form of individual and class actions quickly

9    ensued, and many of those actions were consolidated and assigned to the Honorable

10    Charles Breyer, United States District Judge, Northern District of California, in *In re*

11    *Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability*

12    *Litig.*, Case No. 3:15-md-02672-CRB. On May 17, 2017, Judge Breyer issued an

13    Order Granting Final Approval Of The Consumer And Reseller Dealership 3.0-Liter

14    Class Action Settlement ("Class Settlement"). Plaintiff timely opted out of the

15    Class Settlement. *See* Case No. 3:15-md-02672, Docket 3229-1, ¶ 425.

16        43.    The statute of limitations on Plaintiff's claims against Defendants were

17    tolled during the period Plaintiff was an unnamed member of the proposed class.

18        **Discovery Rule**

19        44.    Plaintiff did not discover, and could not have discovered through the

20    exercise of reasonable diligence, that Defendants had conspired to install software

21    that would evade emissions regulations, and that Defendants were concealing and

22    misrepresenting the true emissions levels of its vehicles.

23        45.    Defendants' fraud was elaborate and well concealed. Indeed, the EPA

24    and CARB uncovered the software manipulation only through a sophisticated and

25    costly investigation involving highly technical equipment.

26        46.    Plaintiff had no realistic ability to discover the presence of the defeat

27    device, or to otherwise learn of the fraud, until it was discovered by the EPA and

28    CARB and revealed to the public through the NOV issued on November 2, 2015.

47.   All applicable statute of limitations have been tolled by operation of the discovery rule with respect to claims as to Plaintiff's Vehicle.

**Fraudulent Concealment**

48.   All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein.

49.   Defendants have known of the defeat devices installed in the Affected Vehicles since at least 2009 when Defendants began installing them.  Since then Defendants have intentionally concealed from and failed to notify Plaintiff and the public of the defeat devices and the true emissions and performance of the Affected Vehicles.

50.   Despite knowing about the defeat device and unlawful emissions, Defendants did not acknowledge the problem, and in fact actively concealed it, until after the EPA issued its NOV in November 2, 2015.

**Estoppel**

51.   Defendants were under a continuous duty to disclose to Plaintiff the true character, quality, and nature of emissions form the Vehicle, and of that vehicle's emissions systems, and of the compliance of those systems with applicable federal and state law.

52.   Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the Vehicle.

53.   Defendants were under a continuous duty to disclose to Plaintiff that they had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that they systematically devalued compliance with, and deliberately flouted, federal and state laws regulating vehicle emissions and clean air.

54.   Based on the foregoing, Defendants are estopped from relying on any

1 │ statute of limitations in defense of this action.

2 │ **FIRST CAUSE OF ACTION**
3 │ **Fraud**
│ **(Against All Defendants)**

4 │     55.    Plaintiff incorporates by reference each preceding paragraph as though
5 │ fully set forth herein.

6 │     56.    As alleged herein, Defendants intentionally concealed and suppressed
7 │ material facts concerning the illegality and quality of the Vehicle in order to defraud
8 │ and mislead both regulators and Plaintiff about the true nature of the Vehicle.
9 │ Defendants accomplished their scheme (and the concealment thereof) by installing
10 │ and/or failing to disclose the defeat device in the Vehicle that caused it to detect
11 │ when it was undergoing official compliance testing and activate certain pollution
12 │ control devises to reduce tailpipe emissions.  During normal driving situations,
13 │ however, the control devices are turned off, resulting in greatly higher emissions of
14 │ noxious NOx and other air pollutants and contaminants than claimed by Defendants
15 │ and allowed by law.

16 │     57.    Defendants also took steps to ensure that their employees and co-
17 │ conspirators did not reveal the details of their scheme to regulators or consumers,
18 │ including Plaintiff.  Defendants did so to falsely assure purchasers of their vehicles
19 │ that Defendants are reputable manufacturers, sellers and advertisers that comply
20 │ with applicable law, including federal and state clean air laws and emission
21 │ regulations, and that Audi-branded vehicles likewise comply with applicable laws
22 │ and regulations.

23 │     58.    Defendants false representations and omissions were material to
24 │ consumers, as they concerned both the legality and core marketing features of the
25 │ Vehicle.  As Defendants well knew, Plaintiff highly valued that the vehicle she was
26 │ purchasing was a "clean" diesel car, and she paid a premium accordingly.

27 │     59.    Plaintiff reasonably relied on Defendants' deception, and Defendants
28 │ intended that she would so rely.  Plaintiff had no way of discerning that Defendants

{2970634.1}

16

1   were, in fact, deceiving her because the defeat device was extremely sophisticated

2   technology and could not be discerned by regulators, much less consumers.  Plaintiff

3   did not, and could not, unravel Defendants' scheme on her own.  In fact, it took

4   years before the engineering community—specifically a research team at West

5   Virginia University's Center for Alternative Fuels, Engines & Emissions—detected

6   the discrepancy of the emissions spewed from certain of the Affected Vehicles using

7   sophisticated, expensive equipment and applying decades of combined experience.

8   And even then, Defendants continued to conceal their fraud until the EPA and

9   CARB applied their collective expertise and leverage.

10       60.   Defendants' devious scheme to design and install defeat device

11   software in the Vehicle for the specific purpose of circumventing U.S. and

12   California law, and then conceal their fraudulent scheme through many model years,

13   reveals a corporate culture that emphasized sales and profits over integrity.  Further,

14   it demonstrates a callous disregard for not only the rule of law but also public health

15   and Defendants' customers, including Plaintiff.

16       61.   Defendants had a duty to disclose the defeat device to regulators and

17   Plaintiff.

18       62.   Defendants hatched the deceptive scheme and knew that its customers,

19   including Plaintiff did not know about (and could not reasonably discover) its

20   scheme.  Defendants not only concealed the illegal defeat devices, which posed a

21   safety risk, but made affirmative misrepresentations about the quality of the Vehicle

22   as a "Clean Diesel" vehicle.  Having made claims that the Vehicle was "clean,"

23   Defendants had a duty to come clean about their dirty and illegal defeat devices —

24   but failed to do so.

25       63.   Defendants actively concealed the defeat device and actual emission

26   levels of the Vehicle to pad their profits and avoid the perception that the Vehicle

27   did not comply with federal and state laws governing clean air and emissions.

28   Defendants engaged in this fraudulent concealment at the expense of Plaintiff.

64.    Plaintiff was not aware of the concealed and misrepresented material facts referenced above, and she would not have acted as she did had regulators or the driving public known the truth because Defendants would not have been able to obtain COCs from the EPA or EOs from CARB for the sale of the Affected Vehicles and as a consequence Plaintiff would never have purchased the Vehicle.

65.    As a direct and proximate result of Defendants' fraudulent scheme, Plaintiff sustained damages.  Plaintiff owns a Vehicle that is non-complaint and severely diminished in value as compared to the vehicles that were advertised and marketed.  Moreover, the Vehicle either cannot be repaired to comply with applicable emissions standards, or if it can be made compliant, its performance, fuel efficiency, and longevity will be comprised.

66.    Defendants are liable to Plaintiff for damages in an amount to be proven at trial.  Moreover, because Defendants acted wantonly, maliciously, oppressively, recklessly, deliberately, and with intent to defraud Plaintiff for the purpose of enriching themselves at Plaintiff's detriment, Defendants' conduct warrants substantial punitive and exemplary damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Breach of Contract**
**(Against All Defendants)**

67.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

68.    The purchase of the Vehicle from an authorized dealer of Defendants constituted a contract between Defendants and Plaintiff.  The Defendants materially breached this contract by selling Plaintiff's defective, non-compliant Vehicle and misrepresenting or failing to disclose the existence of the "clean" diesel engine system's defeat device, rendering the Vehicle substantially less valuable than the vehicles that the Defendants advertised and promised to deliver to Plaintiff.

69.    The Defendants' misrepresentations and omissions alleged herein,

1 | including the Defendants' misrepresentations of the "clean" diesel system and
2 | failure to disclose the existence of the defeat device, caused Plaintiff to enter into
3 | the agreement to purchase the Vehicle.  Absent those misrepresentations and
4 | omissions, Plaintiff would not have purchased her Vehicle, would not have
5 | purchased her Vehicle at the price she paid, and/or would have purchased a less
6 | expensive alternative vehicle that did not contain the "Clean Diesel" engine system
7 | and which were not marketed as including such a system.  Accordingly, Plaintiff
8 | overpaid for the Vehicle and did not receive the benefit of her bargain.

9 | 70. Defendants also breached the implied covenant of good faith and fair
10 | dealing under the law of California.  By delivering a vehicle that contained defeat
11 | device software and, thus, exceeded, during normal use, federal and state emission
12 | limits, and the Defendants' advertised and promised emission levels, by up to nine
13 | times, the Defendants blatantly violated Plaintiff's fair and reasonable expectations
14 | under her contract.  Additionally, Defendants' misrepresentations and omissions
15 | violated their implied duty to deal honestly, and within reasonable commercial
16 | standards of fair dealing, with Plaintiff.

17 | 71. As a direct and proximate result of Defendants' breach, Plaintiff has
18 | been damaged in an amount to be proven at trial, which shall include, but is not
19 | limited to, all compensatory damages, incidental and consequential damages, and
20 | other damages allowed by law.

### THIRD CAUSE OF ACTION
#### Unjust Enrichment
#### (Against All Defendants)

23 | 72. Plaintiff incorporates by reference each preceding paragraph as though
24 | fully set forth herein.

25 | 73. Defendants benefited from selling at an unjust profit the defective
26 | Vehicle whose value was artificially inflated by Defendants' concealment of the
27 | "defeat device," and Plaintiff has overpaid for the Vehicle.

28 | 74. Defendants have received and retained unjust benefits from the

1 | Plaintiff, and inequity has resulted.

2 | 75.   It is inequitable and unconscionable for Defendants to retain these
3 | benefits.

4 | 76.   Because Defendants concealed their fraud and deception, Plaintiff was
5 | not aware of the true facts concerning the Vehicle and did not benefit from
6 | Defendants' misconduct.

7 | 77.   Defendants knowingly accepted the unjust benefits and their fraudulent
8 | conduct.

9 | 78.   As a result of Defendants' misconduct, the amount of their unjust
10 | enrichment should be disgorged and returned to Plaintiff, in an amount to be proven
11 | at trial.

12 | **FOURTH CAUSE OF ACTION**
13 | **Violations of the Consumer Legal Remedies Act**
**(Cal. Civ. Code §§ 1750, *et seq.*)**
14 | **(Against All Defendants)**

15 | 79.   Plaintiff incorporates by reference each preceding paragraph as though
16 | fully set forth herein.

17 | 80.   The California Consumer Legal Remedies Act ("CLRA") prohibits
18 | "unfair or deceptive acts or practices undertaken by any person in a transaction
19 | intended to result or which results in the sale or lease of goods or services to any
20 | consumer[.]" Cal. Civ. Code § 1780(a).  Defendants have engaged in unfair or
21 | deceptive acts or practices that violated the CLRA, as described above and below
22 | by, at a minimum, representing that the Vehicle has characteristics, uses, benefits,
23 | and qualities which it does not have (*id.* § 1770(5)); representing that the Vehicle is
24 | of a particular standard, quality, and grade when it is not (*id.* § 1770(7)); advertising
25 | the Vehicle with the intent not to sell it as advertised (*id.* § 1770(9)); and
26 | representing that the subject of a transaction involving the Vehicle has been supplied
27 | in accordance with a previous representation when it has not (*id.* § 1770(16)).

28 | 81.   In the course of their business, Defendants concealed and suppressed

{2970634.1}
20
COMPLAINT

1  material facts concerning the Vehicle.  Defendants accomplished this by installing
2  the defeat device software in the Vehicle that caused the vehicle to operate in a low
3  emission test mode only during emissions testing.  During normal operations, the
4  Vehicle would emit grossly larger quantities of noxious contaminants, sometimes
5  nine times over applicable standards.  The result was what Defendants intended, the
6  Vehicle passed emissions testing by way of deliberately induced false readings.
7  Plaintiff had no way of discerning that Defendants representations were false and
8  misleading because Defendants' defeat device software was extremely sophisticated
9  technology and could not be discerned by regulators, much less consumers.  Plaintiff
10  did not, and could not, unravel Defendants' scheme on her own.  In fact, it took
11  years before the engineering community—specifically a research team at West
12  Virginia University's Center for Alternative Fuels, Engines & Emissions—detected
13  the discrepancy of the emissions spewed from the Vehicle, using sophisticated,
14  expensive equipment and applying decades of combined experience.

15      82.    Defendants engaged in misleading, false, unfair or deceptive acts or
16  practices that violated the CLRA by installing, failing to disclose and actively
17  concealing the illegal defeat device and the true cleanliness and performance of the
18  "clean" diesel engine system, by marketing their vehicles as legal, reliable,
19  environmentally clean, efficient, and of high quality, and by representing themselves
20  as reputable manufacturers that valued environmental cleanliness and efficiency,
21  and that stood behind their vehicles after they were sold.

22      83.    The CAA and EPA regulations require that automobiles limit their
23  emissions output to specified levels.  These laws are intended for the protection of
24  public health and welfare.  "Defeat devices" like those in the Vehicle are defined
25  and prohibited by the CAA and its implementing regulations.  *See* 42 U.S.C.
26  § 755(a)(3)(B); 40 CFR § 86.1809.  By installing an illegal "defeat device" in the
27  Vehicle and by making that vehicle available for purchase, Defendants violated
28  federal law and therefore engaged in conduct that violates the CLRA.

84.    Defendants knew the true nature of their "clean" diesel engine system for at least six years, but concealed all of that information until November 2015. Defendants were also aware that they valued profits over environmental cleanliness, efficiency, and compliance with the law, and that they were manufacturing, distributing and selling vehicles throughout the United States that did not comply with EPA regulations.  Defendants concealed this information as well.

85.    Defendants intentionally and knowingly misrepresented material facts regarding the Vehicle with intent to mislead Plaintiff.

86.    Defendants knew or should have known that their conduct violated the CLRA.

87.    Defendants owed Plaintiff a duty to disclose the illegality and public health and safety risks of the Vehicle because they possessed exclusive knowledge that they were manufacturing, selling, and distributing a vehicle that did not comply with EPA regulations, intentionally concealed the foregoing from state and federal regulators and Plaintiff, and made incomplete representations about the environmental cleanliness and efficiency of the Vehicle generally, and the use of the defeat device in particular, while purposefully withholding material facts from Plaintiff that contradicted these representations.

88.    As a result of Defendants' conduct as discussed herein, and the bad publicity that it has generated, the Vehicle is now worth significantly less than it otherwise would be worth.

89.    Defendants' fraudulent use of the "defeat device" and its concealment of the true characteristics of the "clean" diesel engine system were material to Plaintiff.  A vehicle made by a reputable manufacturer of safe vehicles is safer and worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedying them.

90.    Defendants' unfair and deceptive acts or practices were likely to and

1  did in fact deceive regulators and reasonable consumers, including Plaintiff, about

2  the true environmental cleanliness and efficiency of Audi-branded vehicles, the

3  quality of the Audi brand, and the true value of the Vehicle.

4      91.   Plaintiff suffered diminished value of her vehicle, as well as lost or

5  diminished use.

6      92.   As a direct and proximate result of Defendants' violations of the

7  CLRA, Plaintiff has suffered injury in fact and/or actual damage.

8      93.   Under Cal. Civ. Code § 1780(a), Plaintiff seeks monetary relief against

9  Defendants measured as the diminution of the value of her Vehicle caused by

10  Defendants' violations of the CLRA as alleged herein.

11      94.   Plaintiff also seeks punitive damages against Defendants because they

12  carried out reprehensible conduct with willful and conscious disregard of the rights

13  and safety of others, subjecting Plaintiff to potential cruel and unjust hardship as a

14  result. Defendants intentionally and willfully deceived Plaintiff on life-or-death

15  matters, and concealed material facts that only Defendants knew. Defendants'

16  unlawful conduct constitutes malice, oppression, and fraud warranting punitive

17  damages under Cal. Civ. Code § 3294.

18      95.   Plaintiff further seeks restitution, punitive damages, costs of court, and

19  attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief

20  available.

21      96.   Plaintiff sent a letter complying with Cal. Civ. Code § 1780(b).

22                        **FIFTH CAUSE OF ACTION**
                      **Violations of the Unfair Competition Law**
23                  **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**
24                          **(Against All Defendants)**

25      97.   Plaintiff incorporates by reference each preceding paragraph as though

26  fully set forth herein.

27      98.   California Business and Professions Code section 17200 (the "UCL")

28  prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendants

1 | have engaged in unlawful, fraudulent, and unfair business acts and practices in
2 | violation of the UCL.

3 |     99.    Defendants' conduct, as described herein, was and is in violation of the
4 | UCL. Defendants' conduct violates the UCL in at least the following ways:

5 |         a.    by knowingly and intentionally concealing from Plaintiff that the
6 |                Vehicle suffers from a design defect while obtaining money from
               Plaintiff;

7 |         b.    by marketing the Vehicle as possessing functional and defect-
8 |                free, EPA-complaint "clean" diesel engine systems;

9 |         c.    by purposefully installing an illegal "defeat device" in the
10 |                Vehicle to fraudulently obtain EPA certification and cause the
               Vehicle to pass emissions tests when in truth and fact id did not
11 |                pass such tests;

12 |         d.    by violating federal laws, including, but not limited to: (i) the
13 |                Clean Air Act, 42 U.S.C. §§ 7401-7671 and its implementing
               regulations; and (ii) the Federal Trade Commission Act, 15
14 |                U.S.C. § 45(a); and

15 |         e.    by violating other California laws, including, but not limited to:
16 |                (i) California Business and Professions Code sections 17500 and
               17580.5; (ii) California Consumer Legal Remedies Act sections
17 |                1770(5), (7), (9), (16); (iii) California Code of Regulations Title
18 |                13, sections 1903, 1961, 1965, 1968.2, and 2037; and (iv)
               California laws governing vehicle emissions and emission testing
19 |                requirements such as California Health and Safety Code sections
20 |                43016, 43151, 43152, 43153, 43211, and 43212.

21 |     100.    Defendants' misrepresentations and omissions alleged herein caused
22 | Plaintiff to make her purchase of the Vehicle.  Absent those misrepresentations and
23 | omissions, Plaintiff would not have purchased the Vehicle, would not have
24 | purchased the Vehicle at the price she paid, and/or would have purchased a less
25 | expensive alternative vehicle that did not contain "clean" diesel engine systems that
26 | failed to comply with EPA and California emissions standards.

27 |     101.    Therefore, Plaintiff has suffered injury in fact including lost money or
28 | property as a result of Defendants' misrepresentations and omissions.

102.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to Plaintiff any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided by UCL sections 17203 and 3345; and for such other relief set forth below.

### SIXTH CAUSE OF ACTION
**Violations of the False Advertising Law**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**
**(Against All Defendants)**

103.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

104.   California Business and Professions Code section 17500 (the "FAL") provides: "It is unlawful for any ... corporation ... with intent directly or indirectly to dispose of real or personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, ..., or in any other manner or means whatever, including over the Internet, any statement ... which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading ...."

105.   Defendants caused to be made of disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff.

106.   Defendants have violated the FAL because the misrepresentations and omissions regarding the safety, reliability, and functionality of the Vehicle as set forth in this Complaint were material and likely to deceive as reasonable consumer.

107.   As a direct and proximate result of Defendants' misleading and false

1  advertising, Plaintiff has suffered injury in fact and have lost money or property.  In

2  purchasing the Vehicle, Plaintiff relied on the misrepresentations and/or omissions

3  of Defendants with respect to the safety, performance and reliability of the Vehicle.

4  Defendants' representations turned out not to be true because the Vehicle was

5  distributed with fault and defective "clean" diesel engine systems, rendering certain

6  safety and emissions functions inoperative.  Had Plaintiff know this, she would not

7  have purchased the Vehicle and/or paid as much for it.  Accordingly, Plaintiff

8  overpaid for her Vehicle and did not receive the benefit of her bargain.

9       108.   Plaintiff request that this Court enter such orders to restore to Plaintiff

10  any money Defendants acquired by unfair competition, including restitution and/or

11  restitutionary disgorgement, and for such other relief set forth below.

12  **SEVENTH CAUSE OF ACTION**<br>**Breach of Express Warranty**<br>**(Cal. Com. Code § 2313)**<br>**(Against All Defendants)**

13

14

15       109.   Plaintiff incorporates by reference each preceding paragraph as though

16  fully set forth herein.

17       110.   Defendants are and were at all relevant times "merchants" with respect

18  to motor vehicles under Cal. Com. Code § 2104(1), and "sellers" of motor vehicles

19  under § 2103(1)(d).

20       111.   The Vehicle is and was at all relevant times "goods" within the

21  meaning of Cal. Com. Code § 2105(1).

22       112.   In connection with the purchase of its new vehicles, Defendants

23  provide an express New Vehicle Limited Warranty ("NVLW") for a period of four

24  years or 50,000 miles, whichever occurs first.  This NVLW exists to cover "any

25  repair or replacement to correct a defect in manufacturer's material or

26  workmanship."

27       113.   The Clean Air Act requires manufacturers of light-duty vehicles to

28  provide two federal emission control warranties: a "Performance Warranty" and a

1  "Design and Defect Warranty".

2  114.  The EPA requires vehicle manufacturers to provide a Performance

3  Warranty with respect to the vehicle's emission systems.  Thus, Defendants also

4  provide an express warranty for their vehicles through a Federal Emissions

5  Performance Warranty.  The Performance Warranty required by the EPA applies to

6  repairs that are required during the first two years of 24,000 miles, whichever occurs

7  first, when a vehicle fails an emissions test.  Under this warranty, certain major

8  emission control components are covered for the first eight years or 80,000 miles,

9  whichever occurs first.  These major emission control components subject to the

10  longer warranty include the catalytic converters, the electronic emission control unit,

11  and the onboard emission diagnostic device or computer.

12  115.  The EPA requires vehicle manufacturers to issue Defect Warranties

13  with respect to their vehicles' emission systems.  Thus, the Defendants also provide

14  an express warranty for their vehicles through a Federal Emission Control System

15  Defect Warranty.  The Design and Defect Warranty required by the EPA covers

16  repair of emission control or emission related parts which fail to function or function

17  improperly because of a defect in materials or workmanship.  This warranty

18  provides protection for two years or 24,000 miles, whichever occurs first, or, for, the

19  major emission control components, for eight years or 80,000 miles, whichever

20  occurs first.

21  116.  As manufacturers of light-duty vehicles, Defendants were required to

22  provide these warranties to purchasers of their "clean" diesel vehicles.

23  117.  Defendants' warranties formed the basis of the bargain that was

24  reached when Plaintiff purchased the Vehicle equipped with the non-EPA compliant

25  "clean" diesel engine and emissions systems.

26  118.  Plaintiff experienced defects within the warranty period.  Despite the

27  existence of warranties, Defendants failed to inform Plaintiff that the Vehicle was

28  intentionally designed and manufactured to be out of compliance with applicable

state and federal emissions laws, and failed to fix the defective emission components free of charge.

119.   Defendants breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any parts they supplied.  Defendants have not repaired or adjusted, and have been unable to repair or adjust, the Vehicle's materials and workmanship defects.

120.   The limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff whole because Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time. Accordingly, recovery by Plaintiff is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff seeks all remedies as allowed by law.

121.   At the time Defendants warranted and sold the Vehicle, they knew that the Vehicle was inherently defective and did not conform to their warranties. Defendants also wrongfully and fraudulently concealed material facts regarding the Vehicle.  Plaintiff was therefore induced to purchase the Vehicle under false and/or fraudulent pretenses.

122.   Many of the injuries flowing from the Vehicle cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of their failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's remedies would be insufficient to make her whole.

123.   Because Defendants' breach of warranty, Plaintiff asserts, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff of the purchase price of the Vehicle currently owned, and for such other incidental and consequential damages as allowed.

124.   Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, within a reasonable amount of time after Defendants publicly admitted to using a defeat device in the Vehicle to evade clean air standards.

125.   As a result of Defendants' breach of their express warranties, Plaintiff has been damaged in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Breach Of Implied Warranty of Merchantability**
**(Cal. Com. Code § 2314)**
**(Against All Defendants)**

126.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

127.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1), and "sellers" of motor vehicles under § 2103(1)(d).

128.   The Vehicle is and was and all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

129.   A warranty that the Vehicle was in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code § 2314.

130.   The Vehicle, when sold and at all times thereafter, was not in merchantable condition and is not fit for the ordinary purpose for which vehicles are used.  Specifically, the Vehicle is inherently defective in that it does not comply with federal and state emissions standards, rendering certain emissions functions inoperative, and the "clean" diesel engine system was not adequately designed, manufactured, and tested.

131.   Defendants were provided notice of these issues by the investigations of the EPA and individual state regulators, numerous complaints filed against them including the instant Complaint, and by numerous individual letters and other

communications sent by Plaintiff and others within a reasonable amount of time
after the allegations of the Vehicle defects became public.

132.   As a direct and proximate result of the Defendants' breach of the
implied warranty of merchantability, Plaintiff has been damaged in an amount to be
proven at trial.

## NINTH CAUSE OF ACTION
### Violations Of Song-Beverly Consumer Warranty Act For Breach of Express Warranties
### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))
### (Against All Defendants)

133.   Plaintiff incorporates by reference each preceding paragraph as though
fully set forth herein.

134.   The Vehicle is a "consumer good" within the meaning of Cal. Civ.
Code 1791(a).

135.   Plaintiff who purchased the Vehicle in California is a "buyer" within
the meaning of Cal. Civ. Code § 1791(b).

136.   Defendants are "manufacturer[s]" of the Vehicle within the meaning of
Cal. Civ. Code § 1791(j).

137.   Plaintiff purchased a new motor vehicle manufactured by Defendants.

138.   Defendants made express warranties to Plaintiff within the meaning of
Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

139.   In connection with the purchase of its new vehicles, Defendants
provide an express NVLW for a period of three years or 36,000 miles, whichever
occurs first.  This NVLW exists to cover "any repair to correct a manufactures
defect in materials or workmanship."

140.   The Clean Air Act requires manufacturers of light-duty vehicles to
provide two federal emission control warranties: a "Performance Warranty" and a
"Design and Defect Warranty".

141.   The EPA requires vehicle manufacturers to provide a Performance

Warranty with respect to the vehicle's emission systems. Thus, Defendants also provide an express warranty for their vehicles through a Federal Emissions Performance Warranty. The Performance Warranty required by the EPA applies to repairs that are required during the first two years of 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever occurs first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic emission control unit, and the onboard emission diagnostic device or computer.

142. The EPA requires vehicle manufacturers to issue Defect Warranties with respect to their vehicles' emission systems. Thus, the Defendants also provide an express warranty for their vehicles through a Federal Emission Control System Defect Warranty. The Design and Defect Warranty required by the EPA covers repair of emission control or emission related parts which fail to function or function improperly because of a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever occurs first, or, for, the major emission control components, for eight years or 80,000 miles, whichever occurs first.

143. As manufacturers of light-duty vehicles, Defendants were required to provide these warranties to purchasers of their "clean" diesel vehicles.

144. Defendants' warranties formed the basis of the bargain that was reached when Plaintiff purchased the Vehicle equipped with the non-EPA compliant "clean" diesel engine system from Defendants.

145. Plaintiff experienced defects within the warranty period. Despite the existence of warranties, Defendants failed to inform Plaintiff that the Vehicle was intentionally designed and manufactured to be out of compliance with applicable state and federal emissions laws, and ailed to fix the defective emission components free of charge.

146.   Plaintiff gave Defendants or their authorized repair facilities opportunities to fix the defects.  Defendants did not promptly replace or buy back the Vehicle of Plaintiff.

147.   As a result of Defendants' breach of their express warranties, Plaintiff received goods whose dangerous condition substantially impairs its value to Plaintiff.  Plaintiff has been damaged as a result of the diminished value of Defendants' product, the product's malfunctioning, and the nonuse of her Vehicle.

148.   Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff is entitled to damages and other legal and equitable relief, including, at her election, the purchase price of her Vehicle, or the overpayment or diminution in value of her Vehicle.

149.   Pursuant to Cal. Civ. Code § 1794, Plaintiff is entitled to costs and attorneys' fees.

**TENTH CAUSE OF ACTION**
**Violations Of Song-Beverly Consumer Warranty Act For Breach of Implied**
**Warranty of Merchantability**
**(Cal Civ. Code §§ 1791.1 & 1792)**
**(Against All Defendants)**

150.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

151.   The Vehicle is a "consumer good" within the meaning of Cal. Civ. Code 1791(a).

152.   Plaintiff who purchased the Vehicle in California is a "buyer" within the meaning of Cal. Civ. Code § 1791(b).

153.   Defendants are "manufacturer[s]" of the Vehicle within the meaning of Cal. Civ. Code § 1791(j).

154.   Defendants impliedly warranted to Plaintiff that their Vehicle was "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792, however, the Vehicle does not have the quality that a buyer would reasonably expect.

155.   Cal. Civ. Code § 1791.1(a) states:

"Implied warrant of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description (2) Are fit for the ordinary purposes for which such goods are used (3) Are adequately contained, packaged, and labeled (4) Conform to the promises or affirmation of fact made on the container or label.

156.   The Vehicle would not pass without objection in the automotive trade because of the defects in the Vehicle's "clean" diesel engine system. Specifically, the Vehicle does not comply with federal and state emissions standards, rendering certain safety and emissions functions inoperative. Further, the "clean" diesel engine system was not adequately designed, manufactured, and tested.

157.   Because of the defects in the Vehicle's "clean" diesel engine system, it is not in merchantable condition and, thus, not fit for ordinary purposes.

158.   The Vehicle is not adequately labeled because the labeling fails to disclose the defects in the Vehicle's "clean" diesel engine system.

159.   Defendants breached the implied warranty of merchantability by manufacturing and selling the Vehicle containing defects associated with the "clean" diesel engine system. Furthermore, these defects have caused Plaintiff to not receive the benefit of her bargain and have caused the Vehicle to depreciate in value.

160.   As a direct and proximate result of the Defendants' breach of the implied warranty of merchantability, Plaintiff received goods whose defective condition substantially impairs its value to Plaintiff. Plaintiff has been damaged as a result of the diminished value of Defendant's product, the product's malfunctioning, and the nonuse of her Vehicle.

161.   Plaintiff is entitled to damages and other legal and equitable relief,

1   including, at her election, the purchase price of the Vehicle, or the overpayment or

2   diminution in value of her Vehicle.  Cal. Civ. Code §§ 1791.1(d) and 1794.

3       162.   Plaintiff is entitled to costs and attorneys' fees.  Cal. Civ. Code § 1794.

4                           **ELEVENTH CAUSE OF ACTION**
                    **Breach Of Express California Emissions Warranties**
5                       **(Cal Civ. Code §§ 1793.2, *et seq.*)**
                            **(Against All Defendants)**
6

7       163.   Plaintiff incorporates by reference each preceding paragraph as though

8   fully set forth herein.

9       164.   The Vehicle is covered by express California Emissions Warranties as

10  a matter of law.  *See* Cal. Health & Safety Code §  43205; Cal. Code Regs. tit. 13,

11  § 2037.

12      165.   The express California Emissions Warranties provide "that the vehicle

13  or engine is …[d]esigned, built, and equipped so as to confirm with all applicable

14  regulations adopted by the Air Resources Board."  Cal. Code Regs. tit. 13,

15  § 2037(b)(1).  This provision applies without any time or mileage limitation. *See id.*

16      166.   The California Emissions Warranties also warrant Plaintiff against any

17  performance failure of the emissions control system for three years or 50,000 miles,

18  whichever occurs first, and against any defect in any emission-related part for seven

19  years or 70,000 miles, whichever occurs first.  Cal. Health & Safety Code

20  §§  43205(a)(2), (4); Cal. Code Regs. tit. 13, §§ 2037(b)(2), (3).

21      167.   California law imposes express duties on "[e]very manufacturer of

22  consumer goods sold in this state and for which the manufacturer has made an

23  express warranty."  Cal. Civ. Code § 1793.2(a).  Among those duties, "[i]f the

24  manufacturer or its representative in this state is unable to service or repair a new

25  motor vehicle…to conform to the applicable express warranties after a reasonable

26  number of attempts, the manufacturer shall either promptly replace the new motor

27  vehicle … or promptly make restitution to the buyer" at the vehicle owner's option.

28  *Id.* § 1793.2(d)(2).

168.   Plaintiff is excused from the requirement to "deliver nonconforming goods to the manufacturer's service and repair facility within this state" because Defendants are refusing to accept them and delivery of the Vehicle "cannot reasonably be accomplished."  Cal. Civ. Code § 1793.2(c).

169.   This Complaint is written notice of nonconformity to Defendants and "shall constitute return of the goods."  Cal. Civ. Code § 1792.2(c).

170.   In addition to all other damages and remedies, Plaintiff is entitled to "recover a civil penalty of up to two times the amount of damages" for the aforementioned violation.  Cal. Civ. Code § 1794(e)(1).  Defendants' existing "qualified third-party dispute resolution process" does not relieve them from the civil penalty imposed because Defendants are not offering the process to Plaintiff for resolution of these California Emissions Warranties issues and the process is not "substantially" compliant.  *See id.* §§ 1794(e)(2) and 1793.22(d), 16 C.F.R. § 702.2.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

A.   Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, punitive damages and exemplary damages under applicable law; and disgorgement, in an amount to be determined at trial;

B.   Rescission of the Vehicle purchase, including reimbursement and/or compensation for the full purchase price of the Vehicle, including taxes, licenses and other fees;

C.   Any applicable statutory and civil penalties;

D.   An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.   For attorneys' fees and costs of suit, as allowed by law;

F.   Leave to amend this Complaint to conform to the evidence produced at trial; and

{2970634.1}

COMPLAINT

1         G.     For such other and further relief as the Court may deem proper.

2

3    # **DEMAND FOR JURY TRIAL**

4         Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by

5    jury of any and all issues in this action so triable of right.

6

7    DATED:  June 26, 2019

8

9

10                                By:       /s/ Daniel Weiss

                                         Daniel Weiss

11

12                                            Attorneys for Plaintiff
                                         ILENE S. RESNICK WEISS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{2970634.1}

36

COMPLAINT